648 F.2d 587
 8 Fed. R. Evid. Serv. 707, 8 Fed. R. Evid. Serv. 88
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Lewis GREEN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Judith Catherine GREEN, Defendant-Appellant.
 Nos. 79-1410, 79-1411.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 6, 1980.
Decided April 15, 1981.
 
 Joseph A. Milchen, Howard B. Frank, Frank & Milchen, San Diego, Cal., for defendant-appellant.
 Stephen G. Nelson, Asst. U. S. Atty., argued, James Lorenz, U. S. Atty., Roger W. Haines, Asst. U. S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before ALARCON and NELSON, Circuit Judges and JAMESON,* District Judge.
 PER CURIAM:
 
 
 1
 Michael and Judith Green appeal from convictions for conspiracy to obstruct justice, conspiracy to make false statements, and conspiracy to violate citizens' civil rights. They contend that the district court committed reversible error in permitting the Government, both in its case in chief and on rebuttal, to introduce evidence concerning appellants' alleged uncharged prior misconduct and that they were subjected to improper cross-examination concerning both their alleged prior misconduct and contraband seized from their Florida home several days after their arrest in California. We reverse the convictions and remand for a new trial.I. Factual Background
 
 
 2
 On May 17, 1977, appellants were charged in California state court, with co-defendants Frederick Messenger and Edgar Allard, with conspiracy to manufacture and distribute LSD. The conspiracy involved a company called Bio-Dyne Industries which was designed to operate as a "cover" for the illegal manufacturing of controlled substances and as the purchasing agent for the components of the drugs to be manufactured. Charges were dismissed against Allard and Messenger, and a tentative agreement was reached between the appellants and the state prosecutor whereby Michael would plead guilty, charges against Judith would be dropped, and the State's position with respect to Michael's sentence would depend upon what "information" he could provide.
 
 
 3
 Appellants then launched upon an investigation of Allard and Messenger in an effort to get information which might benefit appellants' case. They retained Richard Shepard, who had been involved with the Greens in the business of manufacturing and distributing illegal drugs in the early 1970s. Shepard's investigation led him to Technichem, a drug manufacturing company superficially similar to Bio-Dyne, which employed Allard. He was unable to verify Michael Green's belief that Technichem was a "front" for illicit drug activities, however, and he disclosed to Allard that Allard's activities were under investigation by the Greens.
 
 
 4
 Shepard's "investigation" proceeded without success for a few months. After several meetings and conversations with the Greens and their attorney, Louis Rimbach,[1] Shepard was directed to "plant" drugs on the Technichem premises. The Greens were later informed by Shepard that Technichem was ready to be raided. Armed with this "information" the Greens negotiated a deal with the state prosecutor whereby charges in the state action would be dropped against both Michael and Judith Green in exchange for information to be provided by the Greens with respect to Technichem. Pursuant to information then received a consent search of Technichem was conducted. No illegal drug activity was discovered.
 
 
 5
 While Shepard was ostensibly investigating Technichem for the Greens, he was disclosing the substance of his contacts with them to Allard and other Technichem officials. Under their direction he had recorded several telephone calls to both Rimbach and the appellants, in which the parties had discussed the Greens' drug planting scheme. The recordings were ultimately turned over to the United States attorney, who then began to investigate the Greens. This investigation resulted in the convictions at issue here.
 
 
 6
 Shepard was called as a Government witness at appellants' trial. In addition to testimony regarding the 1977-78 events described above, he testified that Michael Green had hired him in 1972 to construct a machine for tableting LSD and to help the Greens corner the LSD market. He testified as to continuing involvement with the Greens in their drug operations throughout 1973 and 1974, and about problems he had with Michael in 1975-76 when a batch of LSD he purchased from Michael turned out to be "bad." Shepard's wife Sharon testified that in 1972 the Greens had suggested the Shepards join their drug operation, that in 1973 they did begin tableting LSD and doing other drug related work for the Greens, that Judith Green had referred to Michael as "the Acid King of California ," and that a big argument between the Shepards and Greens had come about in 1975 as a result of refunds necessary after distribution of the "bad" batch of LSD.
 
 
 7
 Edgar Allard testified concerning appellants' drug-related activities in the early 1970's. He stated that in 1971 he and Michael Green began synthesizing the base chemicals for LSD, converting those chemicals into LSD, tableting and distributing the drugs. These operations continued until 1973.
 
 
 8
 The Greens testified in their own defense. Judith restricted her testimony to those events occurring in 1977-78, but the Government cross-examined her not only with respect to those events, but also as to the early 1970's drug activities. Testimony was also elicited that her husband had not conspired with Shepard, but in fact had avoided contacts with Shepard out of concern for the terms of his probation on unrelated tax evasion charges. His probation had been mentioned by Judith's attorney in his opening argument and by Michael's attorney in his cross-examination of Judith.
 
 
 9
 Michael likewise limited his testimony to the relevant 1977-78 events but was cross-examined concerning his early 1970's drug activities. During cross-examination the Government also developed facts surrounding the seizure of several firearms and drugs from appellants' Florida residence. Possession of these items constituted probation violations.
 
 
 10
 During rebuttal the Government produced testimony regarding the firearms and cocaine seized in the search of the appellants' Florida residence and introduced several firearms and the cocaine into evidence. This evidence was offered to rebut Judith's testimony about Michael's concern for the terms of his probation. Also introduced were pictures of drugs and other items seized from the Florida home, as well as a hand written LSD formula Michael had identified during cross-examination. The Government also produced a witness, Adelle White, who testified that she received LSD from Michael several times during 1971.
 
 
 11
 For the reasons discussed infra, we conclude that evidentiary errors, when considered cumulatively, require reversal. We include a specific discussion of some of the points raised to provide guidance to the district court upon retrial.
 
 II. The Government's Case in Chief
 
 12
 Appellants contend that the testimony in the Government's case in chief with respect to appellants' involvement in the tableting and marketing of LSD between 1972 and 1975 was erroneously admitted and does not come within any of the exceptions of Fed.Rule of Evid. 404(b); and even if relevant, was unfairly prejudicial under Rule 403. Rule 404(b) provides:
 
 
 13
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[2]
 
 
 14
 Rule 404(b) is "one of inclusion which admits evidence of other crimes or acts relevant to an issue in the trial, except where it tends to prove only criminal disposition." United States v. Rocha, 553 F.2d 615, 616 (9 Cir. 1977). This "inclusionary rule", however, is subject to the balancing test of Rule 403.[3] United States v. Sangrey, 586 F.2d 1312, 1314 (9 Cir. 1978).
 
 A. Admissibility under Rule 404(b)
 
 15
 The Government argues that the contested evidence was properly admitted to show appellants' knowledge, and their plan and motive to "frame" Allard and Messenger. Neither party has discussed "opportunity" as a basis for admissibility, which we consider more pertinent under the facts of this case.
 
 
 16
 The appellants were convicted of conspiracy to obstruct justice, conspiracy to violate citizens' rights, and conspiracy to make false statements to a government agency. In sum, they were convicted of conspiring to "frame" the members of Technichem. This required a combination of talents and associations a working knowledge of illicit drug operations, an awareness of the components of and procedures for making LSD, knowledge of persons in a position and of a character which subjected them to suspicion of drug violations, and connections with a "reliable" person educated in the illegal drug business who was personally inclined and capable of carrying out the actual "planting" of the drugs in a convincing manner. Without this specialized background neither of the appellants would have had the capacity, i. e., an opportunity, to commit the crimes charged.[4]
 
 
 17
 "Opportunity" is an express exception of Rule 404(b). Though the word has been little used by the courts it evidently is intended to cover all or a part of a category called "capacity" (see 22 Wright & Graham, Federal Practice and Procedure: Evidence § 5241 at p. 485 (1978); Wigmore, Code of Evidence §§ 386, 400 (3d ed. 1942),[5] and has been applied in similar circumstances. For example, in United States v. McPartlin, 595 F.2d 1321, 1343 (7 Cir.), cert. denied, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979), the court found that evidence that a defendant charged with bribery of public officials was acquainted with a notoriously corrupt state official was relevant to show that he had the kind of political connections to accomplish the charged acts of bribery. See also United States v. Jones, 438 F.2d 461, 466 (7 Cir. 1971), where the court found that evidence that a defendant possessed cocaine was admissible to establish that he had the ability to make the sale charged in the indictment.
 
 
 18
 Evidence is deemed admissible under Rule 404(b) on appeal if it is admissible on any ground. United States v. Gocke, 507 F.2d 820, 824 n. 4 (8 Cir. 1974), cert. denied, 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975); see SEC v. Chenerey Corp., 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). The exceptions of knowledge, plan, motive and opportunity are all closely related. It is unnecessary to specify the exception within which a particular line of inquiry or piece of evidence is admissible. It is enough that the evidence is relevant to an issue in the case other than a defendant's criminal propensity. It is, of course, for the trial court to make the initial determination of relevancy,[6] and the evidence must be carefully scrutinized to determine probative value. United States v. Aims Back, 588 F.2d 1283, 1287 (9 Cir. 1979).
 
 B. Rule 403
 
 19
 Evidence relevant under Rule 404(b) "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice " Rule 403. This determination is generally a matter within the discretion of the trial court, and will not be upset absent an abuse of discretion. United States v. Young, 573 F.2d 1137, 1140 (9 Cir. 1978). In United States v. Sangrey, supra, we refused "to require a mechanical recitation of Rule 403's formula on the record as a prerequisite to admitting evidence under Rule 404(b)," and concluded that the demands of Rule 403 are met if it "appears from the record as a whole that the trial judge adequately weighed the probative value and prejudicial effect of proffered evidence " 586 F.2d at 1315. Where, however, as in this case, the evidence is admitted at trial under a different theory and the record does not disclose that the trial judge performed the necessary weighing under Rule 403, the deference customarily accorded the trial court's ruling is inappropriate. See United States v. Herman, 589 F.2d 1191, 1197-98 (3 Cir. 1978), cert. denied, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979).
 
 
 20
 The record here, unlike that in Sangrey, does not disclose that the district judge balanced the probative value and prejudicial effect of the challenged evidence. It may be helpful to the trial judge in making this determination on retrial to note our concern with respect to particular evidence.
 
 
 21
 We find no abuse of discretion in allowing the introduction of portions of the challenged evidence. For example, setting forth the fact of Shepard's long relationship with the Greens was a foundational prerequisite to establishing the charges of conspiracy. Similarly, evidence of the Greens' connections with Messenger and Allard in Bio-Dyne was highly probative of opportunity, i. e., capacity, knowledge and even motive. The probative value of this evidence was not "substantially" outweighed by its prejudicial effect. 10 Moore's Fed. Practice § 403.02(3).
 
 
 22
 This conclusion does not, however, open the floodgate to allow complete development of the defendants' illicit drug activities from 1971 to the present. Much of the challenged evidence, while arguably relevant to the case, either did not address a contested issue or was of such inconsequential probative significance that it was improper to admit it. To illustrate, while the fact and context of the Greens' relationship with Shepard may have been admissible to support the allegations of the instant conspiracies, development of the particular events occurring within the parameters of that relationship served no apparent relevant purpose. For instance, testimony concerning the dispute between the Greens and Shepards over the defective batch of LSD that they had marketed had no probative worth and served only to inflame the jury.
 
 
 23
 Another illustration is provided by the Government's examination of Sharon Shepard, where the statement was elicited that Judith had referred to her husband as the "Acid King" of California. Once again, while testimony probative of Michael's familiarity with the processes involved in the manufacture of illicit drugs may have been admissible to establish his capacity to commit the crimes charged, reference to his success as a drug dealer unjustifiably creates the risk of undue prejudice.
 
 
 24
 While these errors, considered in isolation, might constitute "harmless" error, when considered in addition to the errors discussed below, we cannot so conclude. Our holding is supported by the fact that, unlike other cases involving the admission of prior "bad acts" evidence, see, e. g., United States v. Lutz, 621 F.2d 940, 944 (9 Cir. 1980), cert. denied, -- U.S. --, 101 S.Ct. 160, 66 L.Ed.2d 75, no proper limiting instruction was given to the jury regarding it. A trial judge's instructions to the jury either not to consider extrinsic evidence at all or to consider it only for limited purposes may cure errors arising from improper admission of such evidence. United States v. Seifert, 648 F.2d 557, -- (9 Cir. 1980); United States v. Bloom, 538 F.2d 704, 710 (5 Cir. 1976), cert. denied, 429 U.S. 1074, 97 S.Ct. 814, 50 L.Ed.2d 792 (1977); citing McBride v. United States, 409 F.2d 1046, 1048 (10 Cir.), cert. dismissed, 396 U.S. 938, 90 S.Ct. 282, 24 L.Ed.2d 240 (1969). Since the challenged evidence was admitted on an improper basis in the first instance, no such instruction could have been given.
 
 III. Cross-Examination
 A. Prior Drug Activities
 
 25
 Despite the fact that the appellants confined their direct testimony to the events occurring in 1977-78, the Government cross-examined them concerning their prior drug activities. The Government contends that this cross-examination did not exceed the scope of direct examination since the appellants had testified regarding statements on the taped conversations, and the tapes contained references to past relationships between the Greens, Shepards, Allard and Messenger. Alternatively, it is argued that the court did not abuse its discretion in allowing this questioning.
 
 
 26
 A defendant "who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination." McGautha v. California, 402 U.S. 183, 215, 91 S.Ct. 1454, 1471, 28 L.Ed.2d 711 (1971), (reh. denied, 406 U.S. 978, 92 S.Ct. 2407, 32 L.Ed.2d 677 (1972); Brown v. United States, 356 U.S. 148, 154-55, 78 S.Ct. 622, 626-27, 2 L.Ed.2d 589 (1958); United States v. Lutz, 621 F.2d at 944. The extent of permissible cross-examination is within the discretion of the trial court. Lewis v. United States, 373 F.2d 576, 578 (9 Cir.), cert. denied, 389 U.S. 880, 88 S.Ct. 116, 19 L.Ed.2d 173 (1967); United States v. Palmer, 536 F.2d 1278, 1282 (9 Cir. 1976).
 
 
 27
 The rules determining relevance discussed above with respect to admissibility under Rule 404 apply with equal force on cross-examination. To the extent that evidence of the appellants' relationships with the other principals involved in the case answered relevant questions raised but left unanswered by appellants' testimony concerning the tapes, it was within the embrace of direct examination and properly admissible.[7] Again, however, the mention of the Greens' past relationships with the Shepards, Allard and Messenger, did not throw open the door for the Government to develop, via cross-examination, all of the particulars of those relationships from 1971 to the present. To the same extent that such testimony was inadmissible under Fed.Rule of Evid. 403 in the Government's case in chief, it was an abuse of discretion to admit it upon cross-examination.
 
 
 28
 B. Evidence Obtained in the Search of Appellants' Florida Residence[8]
 
 
 29
 In his opening statement, after the Government had rested its case, Michael's attorney referred to Michael's probation, one of the terms of which was that he not associate with known drug offenders. He indicated that Michael had not met with Richard Shepard until February 12, 1977, out of respect for that term of his probation. Later, during his cross-examination of Judith, Michael's attorney elicited testimony that Michael for that reason had not met with Shepard before February 12, 1977.
 
 
 30
 The Government, in response to this line of inquiry, cross-examined the appellants with respect to firearms and cocaine recovered in a search of their Florida residence incident to the charges resulting in the convictions on appeal. Pictures of the firearms were also used. Possession of both the firearms and drugs constituted probation violations.
 
 
 31
 A witness may, of course, be cross-examined about matters which he has put in dispute. See Brown v. United States, supra, 356 U.S. at 154-55, 78 S.Ct. at 626-27. See also United States v. Panza, 612 F.2d 432, 437 (9 Cir. 1979), cert. denied, 444 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980). An opening statement, however, having no evidentiary value, cannot operate to place an issue in controversy. See United States v. McLister, 608 F.2d 785, 790 (9 Cir. 1979), citing United States v. Tomaiolo, 249 F.2d 683, 689 (2 Cir. 1957). Michael placed the probation issue in controversy, if at all, when his attorney cross-examined Judith.
 
 
 32
 A novel situation is presented. Michael's attorney represented to the jury that he would produce evidence concerning Michael's probation which would tend to refute the existence of a conspiracy. This he did, not through Michael's direct testimony or that of defense witnesses, but through cross-examination of his client's co-defendant wife. Despite her status as a co-defendant, however, Judith was in fact testifying as a witness in support of Michael.[9] The probation issue was raised for the first time by Michael's attorney; he was not cross-examining Judith on a point raised on direct, but had exceeded its scope to examine Judith "as if on direct." Fed.Rule of Evid. 611(b). The situation was the same as if Michael himself had called Judith to testify in his behalf as a supporting witness. It would not only exalt form over substance to conclude that Michael did not place the probation issue in controversy, but would provide him with an unlimited license to present evidence without fear of rebuttal as well. In cases such as this, where evidence favorable to a defendant is developed for the first time upon cross-examination of a friendly witness by the defendant's own counsel, the Government is entitled to an opportunity to rebut by appropriate means.
 
 
 33
 In our opinion, however, this did not justify the introduction into evidence during cross-examination of the pictures of the firearms found at the Florida residence, nor the subsequent introduction on rebuttal of the firearms and cocaine.
 
 
 34
 The Government correctly points out that none of the authority relied upon by the defendants for the proposition that introduction of firearms and cocaine is prejudicial error (see, e. g., Moody v. United States, 376 F.2d 525 (9 Cir. 1967)) involved cases where the evidence was introduced to contradict testimony developed by the defendant. Nonetheless, "(o)rdinarily the admission into evidence of weapons, or pictures of weapons, which are not directly related to the crime, and to which proper objection is made, is prejudicial to the defendant and in many cases has been held to be reversible error." United States v. Peltier, 585 F.2d 314, 327 (8 Cir. 1978), cert. denied, 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979); citing United States v. Robinson, 560 F.2d 507, 513-16 (2 Cir. 1977), (en banc), cert. denied, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978); United States v. Warledo, 557 F.2d 721, 725 (10 Cir. 1977). Testimony concerning dangerous weapons found in the possession of a "person charged with a crime, no part of which depends upon the use or ownership of the weapon(s), has consistently been regarded as prejudicial error " United States v. Reid, 410 F.2d 1223, 1226-27 (7 Cir. 1969). See also United States v. Martinez, 496 F.2d 664, 669 (5 Cir.), cert. denied, 419 U.S. 1051, 95 S.Ct. 627, 42 L.Ed.2d 646 (1974). In any event, the prejudicial impact of the testimony regarding the firearms found in appellants' home, and particularly their introduction in evidence, substantially outweighed its probative value.
 
 C. Rebuttal
 
 35
 In addition to the evidence with respect to the firearms and cocaine found in appellants' residence, the Government, during rebuttal, produced Michael Green's handwritten 1968 LSD formula, as well as the testimony of several witnesses concerning the Greens' past drug activities. To the extent that this evidence was introduced for the purpose of attacking the Greens' credibility via extrinsic evidence it violated Fed.Rule of Evid. 608(b).[10]
 
 
 36
 The question of what "purpose" is served by the introduction of certain testimony, and therefore its admissibility under Rule 608(b), is a determination that must be left in the first instance to the trial court. In the present case there is adequate basis for concluding that the LSD formula and the testimony of the Government witnesses, with two apparent exceptions, were admissible to demonstrate capacity, or some other relevant aspect of the Government's case. To the extent that such evidence met the criteria of Rules 403 and 404 it was properly admitted.
 
 
 37
 The exceptions relate to the testimony of Adelle White and Richard Fallis. During cross-examination Judith Green had testified that she had never seen LSD, had never seen ergotamine tartrate (an LSD precursor) from 1972-1974, and had never delivered ergotamine tartrate to anyone intending to process it into LSD. Michael testified during cross-examination that the only time he had ever made LSD was during 1965-66 pursuant to a legitimate contract with the National Health Institute. White testified on rebuttal that she had received ergotamine tartrate from Judith two or three times during 1972 and had received LSD from Michael at least five or six times during 1971. Fallis testified that Michael had been a bench chemist between 1963-66, that he had been Michael's supervisor, and that at no point during that period had Michael made LSD for the National Health Institute.
 
 
 38
 While the testimony of these two witnesses might incidentally relate to other issues, it is apparent that it was designed primarily as a direct attack on the defendants' credibility. Subsequent to the trial of this case, this court decided United States v. Bosley, 615 F.2d 1274 (9 Cir. 1980).[11] There the defendant testified that he had never delivered cocaine to anyone. During rebuttal the Government produced a witness who testified to the contrary. The court held the introduction of the testimony was error.
 
 
 39
 Upon Bosley's denial that he had delivered cocaine to Rhodes or anyone else, the Government could attempt on further cross examination to elicit a response from Bosley contradicting his prior testimony, but it could not properly impeach Bosley through extrinsic evidence of Bosley's delivery of cocaine to Rhodes. See, e. g., United States v. Wood, 550 F.2d 435, 441 (9 Cir. 1976).
 
 
 40
 Id. at 1276-77. Applying the express provisions of Rule 608(b) to the facts of this case, we conclude the district court erred in admitting White's and Farris' testimony.[12]IV. Conclusion
 
 
 41
 Reversible error occurs when it is more probable than not that the erroneous admission of evidence materially affected the jury's verdict. United States v. Battencourt, 614 F.2d 214, 218 (9 Cir. 1980); United States v. Valle-Valdez, 554 F.2d 911, 916 (9 Cir. 1977). Even though some of the errors in this case could be considered harmless in isolation, the combination of errors, particularly since the challenged testimony was admitted without the required balancing of probative value and prejudicial effect and without a proper instruction limiting the jury's consideration of the prior "bad acts" evidence, requires reversal. See United States v. McLister, 608 F.2d 785, 788 (9 Cir. 1979).
 
 
 42
 Reversed and remanded for new trial.
 
 ALARCON, Circuit Judge, concurring specially:
 
 43
 I concur in the result.
 
 
 
 *
 The Honorable William J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation
 
 
 [1]
 Louis Rimbach was also named as a defendant in the original indictment which resulted in the convictions appealed here. The jury found him not guilty on all counts
 
 
 [2]
 Fed.Rule of Evid. 404(a) prohibits the introduction of character evidence to prove that an individual "acted in conformity therewith on a particular occasion." To the extent that it applies in this case, discussion of that rule will be subsumed in our consideration of Rule 404(b)
 
 
 [3]
 Rule 403 provides:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 
 
 [4]
 The district court admitted testimony about the Greens' past contacts with Shepard on the theory that it demonstrated the "trust relationship" between them. While this relationship, considered in isolation, provides no basis for admissibility, it is a part of the evidence establishing opportunity, and is therefore relevant for a purpose other than to demonstrate a criminal propensity
 
 
 [5]
 Though the draftsman of the Uniform Rules subsequently wrote a manual for practitioners which did not list "opportunity" among the permissible uses of character evidence it did include the actor's "ability or capacity to do the wrong." See 1 Morgan, Basic Problems of Evidence, p. 214 (1961). 22 Wright & Graham § 5241 at p. 485
 
 
 [6]
 We recognize the problems confronting a trial judge in determining when evidence is inadmissible under Rule 404 as demonstrative of a criminal propensity or admissible under one of the specified exceptions. The question is more easily resolved, however, where the crimes charged are not of a type necessarily connected in any way to the defendant's past conduct. If the crimes charged here had to do with the sale or distribution of drugs, then the challenged evidence would go more directly to the issue of propensity. Here, however, the crimes charged involve a conspiracy to "frame" private citizens; the challenged evidence does nothing to establish a propensity for this type of activity, but only establishes the capability of carrying out the elaborate conspiracy charged
 
 
 [7]
 Fed.Rule of Evid. 611(b) allows the trial court, in the exercise of its discretion, to permit inquiry into additional matters as if on direct examination. This does not, of course, empower the court to effect a broader waiver of the privilege against cross-examination than the defendant himself has brought about through his direct testimony
 
 
 [8]
 This aspect of the case is complicated by the fact that as a result of the search of his residence, Michael Green was convicted, in the United States District Court of Florida, of five counts of possession of a firearm by a convicted felon. 18 U.S.C. App. § 1202(a)(1). In United States v. Green, 634 F.2d 222 (5 Cir. 1981), the Fifth Circuit reversed Michael's convictions on those charges, holding that the fruits of the search had been obtained illegally and must be suppressed. Conceding the illegality of the search, since the Government used that evidence here only for rebuttal and impeachment purposes, the issue once again is whether Michael "opened up" the probation issue through his attorney's questioning of Judith. It is permissible to use illegally obtained evidence for impeachment purposes only when the matter has been opened by the defendant. See discussion at United States v. Whitson, 587 F.2d 948, 951-52 (9 Cir. 1978). We are not called upon to assess the impact of the Fifth Circuit's holding in this case, however, since we conclude that the evidence was inadmissible under Fed.Rule of Evid. 403
 
 
 [9]
 A similar situation was presented in United States v. Nagelberg, 434 F.2d 585 (2 Cir. 1970), cert. denied, 401 U.S. 939, 91 S.Ct. 935, 28 L.Ed.2d 219 (1971). There the husband and wife defendants were convicted of conspiracy to import heroin. During the trial the wife took the stand and testified as to both her own and her husband's good character. The court found that rebuttal testimony of the husband's prior criminal conduct was proper to rebut the defense's evidence of good character. Id. at 587
 
 
 [10]
 Fed.Rule 608(b) provides in pertinent part:
 Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness, or untruthfulness or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
 
 
 [11]
 In Bosley, as here, the defendant denied on cross-examination particular acts which were neither charged nor had resulted in a prior conviction. Extrinsic evidence was admitted to rebut testimony elicited on cross-examination
 
 
 [12]
 The Government urges that Rule 608(b) should not be construed in this manner, since it gives witnesses the opportunity to commit perjury without fear of rebuttal. This contention might be persuasive had the statements in issue been volunteered on direct examination or unelicited on cross-examination. Here the statements were given in direct response to specific questions asked on cross-examination. If the Government believed that it had elicited an untruthful remark, its remedy, as noted in Bosley, was to impeach the witness through cross-examination. Reference to specific instances of conduct for the purpose of attacking credibility may be developed on cross-examination if probative of a witness's character for truthfulness, and their probative value outweighs their prejudicial effect. Fed.Rule of Evid. 608(b); see United States v. Chew Kam Tom, 640 F.2d 1037, (9 Cir. 1981)