**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harvey R. JOHNSON,
Defendant-Appellant.**

No. 85–3097.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1986.

Decided June 24, 1987.

Robert H. Westinghouse, Seattle, Wash., for plaintiff-appellee.

David B. Bukey, Seattle, Wash., for defendant-appellant.

Before SKOPIL, FLETCHER and POOLE, Circuit Judges.

FLETCHER, Judge.

The defendant, Harvey Ray Johnson, appeals his conviction for two counts of bank robbery. He contends that the district court erred in (1) admitting evidence of a third bank robbery; (2) denying his motion to sever the offenses; (3) permitting the introduction of evidence seized without a warrant; (4) finding the lineups not impermissibly suggestive; and (5) failing to investigate fully whether the government had in its possession Jencks Act material. The defendant also maintains that he received ineffective assistance of counsel. We affirm.

## FACTS

On November 7, 1984, a black man entered a branch of the Savings Bank of Puget Sound and asked a teller to give him a quarter and a nickel for three dimes so that he could make a telephone call. As she complied, he placed a note on the counter which said, "Give me all your money or ..." She stopped reading at that point. She tried to take the note, but the robber took it back. He instructed her not to give him any bait bills, which would trigger an alarm and a surveillance camera. The teller described the robber as wearing an orange ski jacket, knitted brown gloves, and a "cossack type hat."

On February 8, 1985, a branch in Seattle's University District of the United Savings and Loan Association was robbed by a black man, acting alone. The man came into the bank, asked an employee for

change in quarters for a $5.00 bill, and left. Approximately five minutes later, he returned, approached another teller, and made the same request. While the teller was getting the change, the man told him to give him all the money. The teller complied with the demand. He was told by the robber not to remove any bait bills. The adjacent teller, who heard the conversation, turned on the alarm. As the robber left the bank, a dye pack that he had been given exploded. This man was described as wearing an orange ski jacket and a dark hat with a brim.

The teller who was robbed at the Savings Bank of Puget Sound picked Johnson out of a photographic montage on January 23, 1985. The day after the United Savings robbery, one teller positively and one tentatively picked Johnson out of a montage. A third United Savings teller tentatively picked a different photograph.

On February 19, 1985, a bank in Tigard, Oregon was robbed by a single black man. He asked a teller for change in quarters for a $5.00 bill. While the teller was making the change, he told her to keep her cash drawer open. He came around the counter and took the money from her drawer and from the adjacent drawer. From the second drawer he also took the bait bills.

The teller described the robber as a black male, 6'3" or 6'4", wearing metal framed glasses and a gold ring, with no stone or jewel. She was unable to make a photo identification. She did, however, later pick the defendant out of a lineup.

The day following the Tigard robbery, Officer Donald McLaughlin of the Oregon State Police arrested Johnson for driving under the influence of alcohol. Johnson identified himself as David Anderson. At the jail, when he was asked to empty his pockets, he produced a large amount of currency, which was put in a sealed plastic bag. Some time later, at the request of FBI Agent Sorenson, Officer McLaughlin unsealed the bag and noted the serial numbers on the bills. He did not obtain a warrant. Five of the bills inventoried were bait bills from the Tigard branch of the Oregon Pioneer Savings and Loan that had been robbed the previous day.

A lineup was held on May 7, 1985, pursuant to a court order. Johnson was the only participant in the lineup who had also been depicted in the photo montage. Two of the tellers who had witnessed the two Seattle bank robberies identified Johnson as the robber; a third teller selected him but said he could not be positive.

Defendant was indicted on three counts of bank robbery, one of which was dismissed. He went to trial for the robberies of the two Seattle banks. Before trial, he moved to suppress the identification on the ground that only he had appeared in both the photo and lineup identification procedures, which he claimed made them impermissibly suggestive. He also attacked the identification made by a United Savings teller because the teller had been shown a surveillance photograph. The court found that the identification procedures were not impermissibly suggestive. The court also denied motions for severance, to exclude evidence pertaining to the Tigard, Oregon robbery, and to suppress physical evidence.

Immediately after suppression hearings, trial began. Defense counsel's strategy was to contest the identifications of the robber by cross-examining the various bank tellers concerning their ability to see his face, the length of time each could see him, and their agitated mental state. At the time the jury was sent to deliberate, Johnson complained to the court of the services rendered by his defense counsel. The court expressed its disagreement. Johnson also renewed his motion for severance, which the court denied.

Johnson was convicted of both counts. His trial counsel was permitted to withdraw, new counsel was appointed, and a timely notice of appeal was filed. The appointed counsel moved for leave to withdraw on the ground that he could not raise any non-frivolous claims on behalf of the defendant. When the motion was granted, new counsel was appointed.

### DISCUSSION

*1. Evidence of Uncharged Oregon Bank Robbery*

Appellant maintains that the district court erred in admitting evidence of the

February 19, 1985 bank robbery in Tigard, Oregon. Appellant does not contest that the evidence was admissible under Rule 404(b); rather he contends that the district court failed to weigh the probative value of the evidence against its unfair prejudice, as required by Rule 403, and that the district court should have found the evidence barred by Rule 403.

■ If a court finds evidence admissible under Rule 404(b), it must then find that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice before the evidence is admissible. Fed.R.Evid. 403; *see United States v. Bailleaux*, 685 F.2d 1105, 1109 (9th Cir.1982) ("[T]he use of such evidence must be narrowly circumscribed and limited" because of danger that defendant will be convicted upon improper inference.).

■ Appellant first contends that the district court erred in failing to weigh the Rule 403 factors. In *United States v. Sangrey*, 586 F.2d 1312 (9th Cir.1978), our court affirmed the district court's admission of evidence of another crime even though the district court neglected to state explicitly that the probative value of the evidence substantially outweighed the danger of unfair prejudice. We held that as long as it appeared from the record that the trial judge performed the balancing required by Rule 403, we would not overturn the court's decision. *Id.* at 1315.[1] The court found that the trial court must have performed the necessary weighing because it knew the requirement of Rule 403 and because defense counsel argued the issue of prejudice to the court. *Id.* In this case, the defendant, in arguing that the counts should be severed, stated before the district court that Rule 403 requires a balancing test after a Rule 404(b) determina-

tion of admissibility is made. We find that the district court implicitly balanced the probative value against the prejudicial effect.[2]

Appellant argues that even if the district court balanced the factors, it balanced incorrectly. We review for abuse of discretion. *Bailleaux*, 685 F.2d at 1110. A court measures the probative value of evidence by its " 'tendency to make the existence of any fact that is of consequence ... more probable or less probable than it would be without the evidence.' " *Bailleaux*, 685 F.2d at 1111 (quoting Fed.R. Evid. 401). The court must consider the degree to which the fact is at issue, *United States v. Herman*, 589 F.2d 1191, 1198 (3d Cir.1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979), and the need for proving the point by using evidence of criminal conduct. *Bailleaux*, 685 F.2d at 1112.

■ Unfair prejudice is measured by the degree to which a jury responds negatively to some aspect of the evidence unrelated to its tendency to make a fact in issue more or less probable, "e.g., that aspect of the evidence which makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *Id.* at 1111. Prejudice will always arise upon the admission of evidence of a defendant's criminal conduct. This prejudice must be included in the calculation together with the prejudice arising from the specific nature of the conduct.

■ Identity was the primary issue in the cases. The similarity of the modi operandi helps identify the robber. The No-

1. Appellant contends that the issue is controlled by *United States v. Green*, 648 F.2d 587 (9th Cir.1981). *Green* is inapposite, however. In *Green*, the district court admitted evidence under Rule 404(b) on the ground that the evidence was relevant to knowledge, plan and motive. We affirmed the holding of the district court, but found the evidence admissible to prove opportunity. Because the district court never made a 404(b) ruling concerning opportunity, it

could not have considered the Rule 403 factors. *Id.* at 593.

2. Nonetheless, we remind the district court that its duty to weigh the factors explicitly maintains the appearance of justice by showing the parties that the court recognized and followed the dictates of the law, and facilitates immeasurably the process of appellate review. Although in this case we affirm the district court's decision, we emphasize the importance of explicit rulings.

vember robbery involved an oral request for change of three dimes followed by a written demand for money. The Oregon robbery, committed three months later, involved an oral request for change of a $5 bill followed by an oral demand for money. The modi operandi were even more similar between the February Washington and Oregon robberies. Both involved a request for change of a $5 bill. Prejudice, on the other hand, arises from the opprobrium of a crime involving intimidation. It is heightened concerning the February charge by the increased similarity. Nonetheless, we find that the district court did not abuse its discretion in finding that the probative value was not substantially outweighed by the prejudicial effect.

### 2. Severance

Appellant contends that the district court abused its discretion, *see United States v. Jenkins*, 785 F.2d 1387, 1393 (9th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 192, 93 L.Ed.2d 125 (1986) and —— U.S. ——, 107 S.Ct. 288, 93 L.Ed.2d 262 (1986); *United States v. Seifert*, 648 F.2d 557, 563 (9th Cir.1980), in denying his motion under Rule 14 to sever Counts I and II. Offenses properly joined under·Rule 8[3] may be severed in the trial court's discretion under Rule 14[4] if joinder is prejudicial. On appeal from a trial court's denial of severance, the defendant must show that the denial was so "manifestly prejudicial" that it overcomes the dominant concern with judicial economy. *Seifert*, 648 F.2d at 563. A denial will be manifestly prejudicial if it violated one of the defendant's substantive rights. *Id.*

Joinder of offenses may prejudice a defendant in that

"(1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find."

*Drew v. United States*, 331 F.2d 85, 88 (D.C.Cir.1964). Charging several crimes may also create a latent feeling of hostility toward the defendant. *Id.* It appears that appellant is concerned with all but the first form of prejudice.

■ If all of the evidence of the separate count would be admissible upon severance, prejudice is not heightened by joinder. A trial court does not abuse its discretion in denying severance under Rule 14 under such circumstances. *See United States v. Irvine*, 756 F.2d 708 (9th Cir.1985) (denying severance where drug evidence would have been admissible in bribery trial to prove intent and ability to solicit bribe); *cf. United States v. Lane*, 474 U.S. 438, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986) (considering fact that evidence of one count would have been admissible in trial of other counts under Rule 404(b) in applying harmless error analysis to joinder under Rule 8(a)).

■ We conclude that the district court properly found that for both charges evidence of one count would have been admissible to prove identity in the other count under Rule 404(b).[5] Identity was the pri-

---

3. Appellant concedes that the counts were properly joined under Fed.R.Crim.P. 8, which states:

 (a) *Joinder of Offenses.* Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

4. Fed.R.Crim.P. 14 provides in relevant part:

 If it appears that a defendant or the government is prejudiced by a joinder of offenses or

of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

5. The *Bailleaux* court established four prerequisites to the introduction of such evidence under Rule 404(b):

 (1) proof that the defendant committed the other crime must be clear and convincing; (2) the prior criminal conduct must not be too remote in time from the commission of the crime charged; (3) the prior criminal conduct must, in some cases, be similar to the offense

mary issue in both charges. The modi operandi, which help establish the identity element, were similar: both were bank robberies involving requests for change that were performed by individuals who knew to avoid money traps. The robberies were separated by three months, a substantial time period, but not too remote to be probative, and were established by clear and convincing evidence.

 Further, we find that the probative value of the evidence would not have been substantially outweighed by its prejudicial effect. *See* Fed.R.Evid. 403. There was some prejudice in introducing evidence of a bank robbery, both in the opprobrium associated with the crime and the likeness of the offenses, but because the evidence was relevant to identity, particularly in light of the similar method of conducting the acts, we conclude that the evidence would have been admissible. The appellant therefore was not prejudiced by the district court's refusal to grant his motion for severance.

 Even if the evidence would not have been admissible, the district court did not abuse its discretion because the jury was not likely in this case to confuse which count particular evidence was introduced to establish. When evidence concerning the other crime is limited or not admissible, our primary concern is whether the jury can reasonably be expected to "compartmentalize the evidence" so that evidence of one crime does not taint the jury's consideration of another crime. *United States v. Douglass,* 780 F.2d 1472, 1479 (9th Cir. 1986) (citations omitted) (affirming district court's refusal to sever trials of defendants charged with offenses relating to two-day marijuana conspiracy from trial of defendants charged with continuing criminal enterprise). We must insure that the trial court properly instructed the jury on the limited admissibility of evidence, *id.,* and

charged; and (4) the prior criminal conduct must be introduced to prove an element of the charged offense that is a material issue in the case.
*United States v. Bailleaux,* 685 F.2d 1105, 1110 (9th Cir.1982) (footnote omitted).

will determine whether the jury appeared to have followed the instructions. *United States v. Hsieh Hui Mei Chen,* 754 F.2d 817, 823 (9th Cir.), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985); *see also United States v. Brady,* 579 F.2d 1121, 1128 (9th Cir.1978) (jury could reasonably be expected to compartmentalize where the issues were relatively simple and trial lasted only three days), *cert. denied,* 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979).[6]

During the three-day trial, the government presented evidence of each of the robberies in sequence. Different witnesses testified concerning different offenses, and the issues were relatively simple. Although the district court did not attempt to separate the counts during the presentation of evidence, the court instructed the jury that "[e]ach count charges a separate crime. You must decide separately what the evidence in the case shows about the crime." There was some prejudice. A jury is likely to find compartmentalizing evidence of separate counts allegedly committed by a single defendant more difficult than compartmentalizing evidence of counts of separate defendants as in *Douglass* and *Hsieh Hui Mei Chen.* In addition, joinder of counts similar in nature—here, bank robberies committed without a weapon—creates a greater danger of prejudice than the joinder under Rule 8(a) of dissimilar charges. *United States v. Pierce,* 733 F.2d 1474, 1477 (11th Cir.1984). Nonetheless, in light of the relative simplicity of the issues and the straightforward manner of presentation, we conclude that the district court did not abuse its discretion in denying the defendant's motion to sever the offenses.

### 3. Warrantless Search of Currency

Appellant contends that the district court erred in denying his motion to suppress evidence obtained through a warrantless

**6.** Even where evidence of one of the crimes is particularly weak, *see, e.g., United States v. Ragghianti,* 527 F.2d 586 (9th Cir.1975), we consider principally whether the jury was likely to have been confused. *Douglass,* 780 F.2d at 1479.

search of currency. Currency was found in the defendant's jacket at the time of his arrest for driving under the influence of alcohol. It was inventoried and placed in a sealed envelope. Later, at the request of an FBI agent, the envelope was opened and the serial numbers compared with a list of those of money stolen in the Tigard, Oregon robbery. Five of the numbers matched. The district court denied the motion to suppress on the ground that the second search was an inventory search legitimately conducted without a warrant. A mixed question of law and fact in a warrantless search and seizure case is reviewed *de novo. See United States v. Miller,* 769 F.2d 554, 556 (9th Cir.1985).

In *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the Supreme Court identified three rationales for an inventory search: to protect the owner's property in public custody; to protect the police against claims for lost property; and to protect the police and community from potential danger. *Id.* at 369, 96 S.Ct. at 3097; *see also United States v. Feldman,* 788 F.2d 544, 550–51 (9th Cir.1986). None of these motivations compelled the officer to open the package. Rather, he examined the currency in order to determine whether it was the currency stolen in a bank robbery. Searching for incriminating evidence of a crime does not fall within the purview of an inventory search. *Feldman,* 788 F.2d at 553.

 Although we disagree with the district court's conclusion that the search was an inventory search, we uphold the district court's denial of the motion to suppress under *United States v. Burnette,* 698 F.2d 1038 (9th Cir.), *cert. denied,* 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983).[7] In *Burnette,* police officers subjected the defendant's purse to a cursory search under the exception to the warrant requirement for a search incident to arrest. Officers subsequently searched the purse more thoroughly at the police station, again without a warrant. We held that evidence dis-

covered during the second search was admissible because the defendant's expectation of privacy was significantly reduced by the initial, valid search. *Id.* at 1049. We concluded that "once an item in an individual's possession has been lawfully seized and searched, subsequent searches of that item, so long as it remains in the legitimate uninterrupted possession of the police, may be conducted without a warrant." *Id.*

 In this case, appellant does not assert that the initial examination of the money was not a proper inventory search. Even though the officer did not in fact at first record the serial numbers of the bills, he could have done so legitimately without a warrant. Accordingly, we find that appellant's expectation of privacy was significantly reduced, and that the information obtained during the second search was admissible.

### 4. Evidence of Lineup Identification

 Appellant argues that evidence of lineup identifications and subsequent in court identifications by six witnesses should have been suppressed. Whether a pretrial identification procedure is impermissibly suggestive is reviewed *de novo. United States v. Bagley,* 772 F.2d 482, 492 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986). Admission of pretrial identifications violates due process of law when the identification procedure creates a "very substantial likelihood of irreparable misidentification." *United States v. Davenport,* 753 F.2d 1460, 1462 (9th Cir.1985) (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)). We examine the "totality of the surrounding circumstances" to determine whether the procedure was unnecessarily suggestive. *Davenport,* 753 F.2d at 1462 (citing *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967)). Even if the procedure was unnecessarily suggestive, use of the evidence is appropriate " 'if sufficient indicia of reliability are

7. We may affirm the district court's ruling on any basis fairly supported by the record. *Bur-* *nette,* 698 F.2d at 1048.

present.'" *United States v. Monks,* 774 F.2d 945, 956 (9th Cir.1985) (quoting *United States v. Hanigan,* 681 F.2d 1127, 1133 (9th Cir.1982), *cert. denied,* 459 U.S. 1203, 103 S.Ct. 1189, 75 L.Ed.2d 435 (1983)).

Appellant maintains that the totality of the circumstances indicate that the pretrial identification procedures were impermissibly suggestive. He notes the presence of four circumstances: (1) the defendant was the only person in the photo montage as well as the lineup; (2) he was the only person in the lineup above the age of thirty; (3) two others in the lineup were noticeably more clean shaven than the defendant; and (4) the photograph of the defendant was hazier than the other photos in the photo montage.

In *Davenport,* 753 F.2d at 1462–63, we held that it was not unnecessarily suggestive, without further indicia of suggestiveness, that the defendant was the only individual to appear in both the photo montage and the lineup. In this case, we do not find that the defendant looked sufficiently dissimilar from the others in the lineup or that the photograph was so hazy as to provide "further indicia of suggestiveness." Nor does the record reflect that the montage was displayed or the lineup conducted in such a way as to focus on the defendant. We therefore conclude that the lineup identifications were properly admitted.

*5. Written Statements of Witnesses*

■ Under the Jencks Act, 18 U.S.C. § 3500 (1982), the United States must produce upon a motion of the defendant, any statement of a government witness relating to the subject matter of the witness's testimony after the witness has testified. The government claimed, and the district court believed, however, that no written statements were received by federal officials. Appellant maintains that the district court erred in failing to make an explicit finding concerning whether the officials possessed the statements, and in relying exclusively on the hearsay testimony of an FBI agent in charge of the investigation who was not present when the witnesses were interviewed in implicitly finding the government did not possess the statements.

The administration of Jencks Act disclosures is "entrusted to the 'good sense and experience' of the district judge." *United States v. Dupuy,* 760 F.2d 1492, 1497 (9th Cir.1985) (quoting *United States v. Parker,* 549 F.2d 1217, 1224 (9th Cir.), *cert. denied,* 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977)). In this case, the court directed the government to determine whether it received any written statements and if so, to locate them. An FBI agent contacted the Seattle Police and banks in order to find them. He testified that he also personally asked the agents involved in the case whether they ever received the notes and was told they had not. Defendant did not object to the admission of the FBI agent's hearsay and did not request after his testimony that the court conduct further inquiries. The district court's determination that the government did not possess the written statements was not clearly erroneous. *See United States v. Goldberg,* 582 F.2d 483, 486 (9th Cir.1978), *cert. denied,* 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979).

*6. Ineffective Assistance of Counsel*

Appellant contends that he may have received ineffective assistance of counsel and requests that this court remand to the district court for further findings of fact. He alleges that he may have been harmed by counsel's failure to interview certain witnesses, ascertain the amount of money taken in the Oregon robbery, and determine whether the defendant owned more than one car. He was particularly concerned that he may not have waived his right to testify on his own behalf.

In alleging ineffective assistance of counsel, the defendant has the burden of proving that: (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must point to errors or omissions in the record to establish his claim. *United States v. Rogers,* 769 F.2d 1418, 1424 (9th Cir.1985). De-

fendant does not contend that this record is sufficient, rather he requests that he have an opportunity to supplement it on remand to the district court.

The customary procedure for claims of ineffective assistance of counsel in federal criminal trials is by collateral attack on the conviction under 28 U.S.C. § 2255 (1982). *Id.* at 1424–25; *United States v. Birges*, 723 F.2d 666, 670 (9th Cir.), *cert. denied*, 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472 (1984) and 469 U.S. 863, 105 S.Ct. 200, 83 L.Ed.2d 131 (1984). In a section 2255 proceeding, a defendant may present new facts for the record. Appellant suggests no reason why the customary procedure should be rejected. His reliance on *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), is misplaced because *Cronic* remanded for the proper application of law to facts already ascertained, not for the development of a new factual record.

 Appellant does not raise any issue of law. He contends that he may not have waived his right to testify on his own behalf because he did not sign a written waiver. However, a waiver need not be written to be effective. *See* 18 U.S.C. § 3481 (1982) (authorizing accused to testify *at his own request*) (emphasis added); *United States v. Systems Architects, Inc.*, 757 F.2d 373, 375–76 (1st Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 139, 88 L.Ed.2d 115 (1985); *see also United States v. Ives*, 504 F.2d 935, 941 (9th Cir.1974) (holding that defendant can waive right to testify through contumacious conduct), *vacated*, 421 U.S. 944, 95 S.Ct. 1671, 44 L.Ed.2d 97 (1975); *reinstated in relevant part and vacated in part*, 547 F.2d 1100 (9th Cir.1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977). To the extent that appellant maintains that he did not actually waive his right to testify or that his waiver was not knowing and voluntary and that he would have testified given the chance, these are issues of fact, which may be raised in a section 2255 proceeding.

We therefore deny appellant's request for a remand.

## CONCLUSION

The district court's rulings concerning the admission of evidence of the Tigard robbery, severance, the warrantless search of currency, the identifications, and written statements are affirmed. Defendant's request for remand to the district court to determine whether he received ineffective assistance of counsel is denied.