**UNITED STATES of America, Plaintiff,**

v.

**Robert Wendell SEYMOUR, Defendant.**

**No. CR 96–016 PHX ROS.**

United States District Court,
D. Arizona.

July 10, 1996.

Lawrence I. Kazan, Debus & Kazan PC, Phoenix, AZ, for defendant.

Reid Charles Pixler, U.S. Attorney's Office, Phoenix, AZ, for plaintiff.

## ORDER

SILVER, District Judge.

Defendant filed a Motion to Suppress the evidence seized after he was arrested for driving on a suspended license. A hearing was held; the matter was comprehensively briefed and argued and the Court took the matter under advisement. The Court hereby denies the Motion.

### *Factual Findings*

The evidence provided on this issue was elicited from Department of Public Safety (DPS) Officer Lori Rheaume. The Court finds her testimony credible. She was forthright, nonevasive and gave answers with no equivocation.

On December 22, 1995 at approximately 8:30 pm Officer Rheaume was on an interstate highway in the District of Arizona when she observed the Defendant's vehicle traveling at a high rate of speed and crossing three lanes of traffic. Officer Rheaume stopped the vehicle and the Defendant exited the vehicle. He told her that the vehicle was owned by his friend in California. (Rptr.Tr. at 15) She described him as appearing "to be very nervous" and "his eyes were very bloodshot." (Rptr.Tr. at 14) The Defendant informed the officer that he had a weapon on the dash inside the vehicle and she removed it. (Rptr.Tr. at 15) Officer Rheaume asked for the Defendant's driver's license, vehicle registration and proof of insurance. She determined that the Defendant was driving with a suspended license for failure to appear on a speeding ticket. (Rptr.Tr. at 15) At approximately 8:40 pm she advised the Defendant that he was under arrest. (Rptr.Tr. at 17) Officer Rheaume elected to take the Defendant into custody because it was her "standard procedure" to "take [a defendant] into custody if at all possible" unless the area she was patrolling was uncovered. (Rptr.Tr. 18–19) Officer Rheaume stated that this was consistent with the Department of Public Safety policy and procedure manual. She explained that it was DPS policy to allow an officer to elect to either take a defendant charged with a misdemeanor into custody or to release him. (Rptr.Tr. at 49) In particular, when Officer Rheaume arrested somebody with a suspended license she often elected to take them into custody "[b]ecause they're not authorized to be operating the motor vehicle. [She had] in the past cited and released individuals when [she] was the only person and told them to walk and make arrangements, and [she had] seen them come back and take the vehicle. And then [she] had to take them to jail." (Rptr.Tr. at 50)

Officer Rheaume placed the Defendant in her patrol car and then she called a towing company to remove Seymour's vehicle from the highway. Immediately thereafter Officer Rheaume, in accordance with DPS policy, conducted an inventory search of the vehicle before the towing took place and found a black leather bag containing a blue canvass bag with five round cellophane wrapped bundles, later identified as a controlled substance. (Def.Ex. 1, Rptr.Tr. at 19–20) According to Officer Rheaume the search was also conducted incident to the arrest of the Defendant. (Rptr.Tr. at 20)

### *Governing Legal Principles and Analysis*

#### A. *Inventory Search*

After lawfully taking custody of property, the police may conduct a warrantless search of property to satisfy three distinct purposes:

(1) Protection of the owner's property while it is in police custody;

(2) Protection of the police against claims of lost or stolen property; and

(3) Protection of the police from potential danger.

*Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987).

The police officer may not conduct an inventory search in bad faith or solely for investigative purposes, *United States v. Johnson*, 820 F.2d 1065, 1072 (9th Cir.1987), but an inventory search is justified even when the searching officer suspects that contraband or evidence may be found. *United States v. Bowhay*, 992 F.2d 229, 231 (9th Cir.1993) (inventory search of satchel valid even if officer had additional investigative

motive). To prevent the officer from rummaging for incriminating evidence the Supreme Court requires that the inventory search be conducted pursuant to standard guide criteria. *Florida v. Wells*, 495 U.S. 1, 5, 110 S.Ct. 1632, 1635–36, 109 L.Ed.2d 1 (1990).

The Defendant argues that pursuant to the Arizona Department of Public Safety policy promulgated in September of 1995 an officer is precluded from removing vehicles "if the person in charge of the vehicle was able to provide for the vehicle's removal pursuant to ARS § 28–872(c)(2)." (Def.Ex. # 1) Defendant argues that although he did not own the vehicle he was in charge of it. First, the Defendant offered no evidence at the hearing to establish that he was "able" to provide for the vehicle's removal. There is nothing in the written policy of the DPS (Order) which suggests that the officer must initiate and make an effort to allow an *arrested* individual to provide for the vehicle's removal. In fact, the same general DPS Order allows for officers to remove vehicles pursuant to ARS §§ 28–871 and 28–872 and for seizure pursuant to law. In particular, Section 28–872(c)(3) allows the officer to remove the vehicle when the person in control of the vehicle is arrested and the officer is required to take the person before a magistrate. For the reasons set forth below Officer Rheaume was required to take the Defendant before a magistrate.

The rationale underlying ARS § 28–872(c)(2) is that law enforcement officers have a duty to keep the streets clear of public nuisances. *Fields v. Steyaert*, 21 Ariz. App. 30, 515 P.2d 57, 60 (1973) (Stevens, J. dissenting in part and concurring in part), citing *Hughes v. City of Phoenix*, 64 Ariz. 331, 170 P.2d 297 (1946). In the instant case Officer Rheaume removed the vehicle by the most expeditious means available after the Defendant was placed under ·arrest. Once the Defendant was taken into custody it was Officer Rheaume's legal obligation to take him as quickly as possible to the nearest magistrate. ARS § 13–3898A states:

A person arrested without a warrant shall without unnecessary ·delay be taken before the nearest or most accessible magistrate in the county in which the arrest occurs, and a complaint shall be made before the magistrate setting forth the facts, and the basis for his statement of the facts, showing the offense for which the person was arrested.

■■■ Once the officer takes a person into custody she may remove or cause to be removed any vehicle that the person was driving pursuant to ARS § 28–872(c)(3). Defendant argued that this subsection was not applicable because the officer was not *required* to arrest the defendant for a misdemeanor. It is a correct statement of the law that ARS § 13–3898A, as set forth above, is not applicable if the officer decides to proceed under ARS § 13–3903A which reads:

In any case in which a person is arrested for an offense that is a misdemeanor or a petty offense, the arresting officer *may release* the arrested person from custody in lieu of taking such person to the police station by use of the procedure prescribed . in this section. (emphasis added)

Importantly, the arresting officer's decision to release the suspect pursuant to this statute is optional and not mandatory. *State v. Pickett*, 126 Ariz. 173, 613 P.2d 837, 838 (App.1980).

In the case at bar Officer Rheaume determined for valid and logical·reasons that she would arrest the Defendant and take him before a magistrate rather than releasing him. She stated that in her experience when she had previously released defendants charged with driving with· a suspended license she later discovered that they drove the vehicle instead of having it towed which then required her to arrest them. This procedure is not in any respect inconsistent with Arizona Revised Statutes or the Arizona Department of Public Safety general order regarding the removal of vehicles from the highway. Consequently, the Court finds that the inventory search conducted after the arrest of the Defendant was made for the protection of the owner's property while it was in police custody and protection of the police against claims of lost or stolen property. Furthermore, the Court finds that the inventory search was not conducted in bad faith or solely for investigatory purposes.

B. *Search Incident to an Arrest*

■■■ Incident to a lawful arrest police officers may conduct a contemporaneous

search of the passenger compartment of a vehicle in which the person had been a passenger prior to his arrest and the officer may search the enclosed containers within the vehicle. *New York v. Belton,* 453 U.S. 454, 462–63, 101 S.Ct. 2860, 2865–66, 69 L.Ed.2d 768 (1981); *United States v. Moorehead,* 57 F.3d 875, 877 (9th Cir.1995). This exception is not dependent upon a defendant's ability to reach items in the passenger compartment. *Moorehead,* at 878; *United States v. Nohara,* 3 F.3d 1239, 1243 (9th Cir.1993) (warrantless search of bag valid after arrest when defendant handcuffed and seated in the hallway). It is enough that the search be contemporaneous with the arrest and the defendant is not required to be in the motor vehicle and may be restrained at the time the search occurs. *Moorehead,* at 878.

The Court finds that Officer Rheaume's search of the vehicle very shortly after his arrest was incident to Defendant's lawful arrest.

Accordingly,

**IT IS ORDERED** denying Defendant's Motion to Suppress Evidence Seized incident to Defendant's arrest.