**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Leonard DAVENPORT,**
**Defendant-Appellant.**

No. 82–1748.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1984.

Decided Jan. 30, 1985.

Rehearing Denied Feb. 28, 1985.

Sandra Teeters, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

J. Frank McCabe, San Francisco, Cal., for defendant-appellant.

Before MERRILL, SKOPIL and FERGU-SON, Circuit Judges.

MERRILL, Circuit Judge:

John Leonard Davenport appeals his conviction of armed bank robbery under 18 U.S.C. § 2113(a) and (d). He claims that the district court erred in (1) failing to hold an evidentiary hearing outside the presence of the jury; (2) granting the prosecution's request for a lineup; (3) admitting identification evidence at trial and (4) allowing cross-examination of a defense witness regarding Davenport's prior statements. Jurisdiction over this appeal from the district court's final judgment is based upon 28 U.S.C. § 1291.

I.

The Olympic Savings & Loan Bank in San Francisco was robbed on August 11, 1982. Timothy Hill, a bank teller present at the time of the robbery, was shown a photographic identification spread by a city police officer. The prosecution later requested a lineup, mistakenly informing the court that no witness had previously been asked to identify the robber. Davenport's attorney claimed that some witnesses had been shown photographs for identification purposes. The court granted the prosecution's motion, and a lineup was held at which Hill identified Davenport as the robber. Soon after the lineup, the prosecution learned that Hill had been shown a photographic spread and so informed the court and Davenport's attorney. Defense coun-

sel then moved to suppress the lineup and requested a hearing to determine the reliability of the anticipated in-court identification. The district court refused to conduct such a hearing outside the presence of the jury, and Hill identified Davenport as the bank robber at trial.

During the trial, Luwanda Sharif, an employee of Wells Fargo Bank, testified that she was with Davenport at his apartment during the robbery. On cross-examination, the prosecutor asked Sharif whether she had told any other employee of Wells Fargo that Davenport was thinking about robbing Wells Fargo and was going to use her as a "passkey." The question was permitted over the objection of defense counsel, and Sharif answered in the negative.

## II.

Davenport contends that the district court erred in denying his motion to hold an in-chambers hearing regarding the admissibility of the lineup identification. The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment does not require a *per se* rule compelling a judicial determination outside the presence of the jury of the admissibility of identification evidence. *Watkins v. Sowders*, 449 U.S. 341, 349, 101 S.Ct. 654, 659, 66 L.Ed.2d 549 (1981).[1]

The Court recognized that in certain, undefined circumstances a hearing outside the presence of the jury might be necessary. *Watkins*, 449 U.S. at 349, 101 S.Ct. at 659. The Davenport trial does not, however, present such exceptional circumstances. The district court afforded Davenport's counsel the opportunity to probe the reliability of the identification evidence on cross-examination.

A hearing out of the presence of the jury to determine the admissibility of identification evidence is often prudent and advisable. *Watkins*, 449 U.S. at 345, 349, 101 S.Ct. at 657, 659. The district court did not, however, abuse its discretion in denying Davenport's motion for an in-chambers hearing on the identification evidence.

## III.

Davenport further claims that the prosecution's failure at the pretrial hearing to disclose the fact that a witness to a lineup identification had previously been asked to identify the robber amounted to a suppression of exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Disclosure, to escape the *Brady* sanction, must be made at a time when the disclosure would be of value to the accused. *United States v. Elmore*, 423 F.2d 775, 779 (4th Cir.) *cert. denied*, 400 U.S. 825, 91 S.Ct. 49, 27 L.Ed.2d 54 (1970). Here, Davenport had access to the exculpatory information from the beginning of trial and made use of it in cross-examining a witness. The delay in providing the information does not, therefore, constitute a due process violation.

## IV.

Davenport next argues that the lineup identification of him as the robber should have been suppressed because the identification procedures created a "very substantial likelihood of irreparable misidentification," in violation of due process of law. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Whether an identification procedure is so unnecessarily suggestive as to give rise to a substantial likelihood of mistaken identification depends on the totality of the surrounding circumstances. *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).

---

1. Davenport claims that *United States v. Allison*, 414 F.2d 407 (9th Cir.), *cert. denied*, 396 U.S. 968, 90 S.Ct. 449, 24 L.Ed.2d 433 (1969) compels such a hearing. In *Allison*, the court held that appellant's motion at trial was insufficiently specific to require inquiry into the due process issue. The court's statement, "[w]e agree that where a timely and sufficient motion is made to suppress identification testimony on the ground that it has been tainted by pretrial photographic identification procedures, it must be heard and determined by the court outside the jury's presence," *Allison*, 414 F.2d at 410, must, therefore, be regarded as dictum. In light of *Watkins*, we are unpersuaded by this dictum.

■ We do not regard either the lineup or the in-court identification as unnecessarily suggestive.[2] The fact that Davenport was the only individual common to the photo spread and the lineup cannot, without further indicia of suggestiveness, render the lineup conducive to irreparable misidentification. *See United States v. Portillo*, 633 F.2d 1313, 1324 (9th Cir.1980), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1764, 68 L.Ed.2d 241 (1981).

■ Likewise, the four-day period between the lineup and the beginning of the trial did not taint the in-court identification. The jury was fully aware that the witness had recently identified Davenport in the lineup and could determine the weight to be afforded that identification. *See Simmons*, 390 U.S. at 384, 88 S.Ct. at 971. *Cf. Watkins*, 449 U.S. at 347, 101 S.Ct. at 658 (deference paid to jury's ability to determine the truth).

### V.

■ Finally, Davenport claims that cross-examination of his alibi witness was cause for mistrial. The witness was asked,

"Q. Did you ever tell Mary Mabes that the defendant had told you he wanted you to help him rob the Wells Fargo Bank?

A. No."

The question arguably was probative of the witness' possible bias and self-interest, and her credibility was therefore in issue. *See* Fed.R.Evid. 608(b). If the witness denied the question, the jury could believe or disbelieve her answer.

Her denial would, however, leave uncontraverted the insinuation that the defendant had planned to engage in additional bank robberies. The prejudice to the defendant was, thus, created by the question itself rather than by the testimony given in response. *See United States v. Park*, 525 F.2d 1279, 1284–85 (5th Cir.1976); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 608[05] at 608–26 (1982).

The danger in such a situation is that the prosecution will use the question to waft an unwarranted innuendo into the jury box, knowing that the witness' denial will only serve to defend her credibility, while leaving uncontradicted the reference to the defendant's prior bad conduct. This danger of prosecutorial misconduct is especially acute where, as here, the insinuation is inadmissible propensity evidence upon the government's case in chief. *See* Fed.R. Evid. 404; *United States v. Webb*, 466 F.2d 1352, 1353 (9th Cir.1972); 1A Wigmore, *Evidence* § 58.2 (Tillers Rev.1983).

A limiting instruction would be ineffective in preventing an unjustified innuendo from coming to the attention of the jury. Instead, the solution is provided by Wigmore, who has dealt with such questioning in the context of cross-examination of a character witness as follows:

> This method of inquiry or cross-examination is frequently resorted to by counsel for the very purpose of injuring by indirection a character which they are forbidden directly to attack in that way; they rely upon the mere putting of the question (not caring that it is answered negatively) to convey their covert insinuation. The value of the inquiry for testing purposes is often so small and the opportunities of its abuse by underhand ways are so great that the practice may amount to little more than a mere subterfuge, and should be strictly supervised by forbidding it to counsel who do not use it in good faith.

Wigmore, *Evidence* (3rd ed. 1940) § 988, *quoted in Michelson v. United States*, 335 U.S. 469, 474 n. 4, 69 S.Ct. 213, 217 n. 4, 93 L.Ed. 168.

■ The government, thus, must have a good faith belief in the misconduct of the defendant which was the subject of the question. If mistrial is to be avoided, this good faith must be established to the satisfaction of the court, outside the presence of

---

2. Because we do not regard the confrontation procedures as unnecessarily suggestive, we need not consider the reliability of the identification in determining whether the procedures gave rise to a substantial likelihood of mistaken identification. *Cf. Neil v. Biggers*, 409 U.S. 188, 198–99, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972).

the jury, before the question is asked. *See Zargoza-Almeida v. United States,* 427 F.2d 1148, 1149–50 (9th Cir.1970).[3] There is no indication here that good faith was ever established by informing the judge of a basis for the governmental belief that the statement attributed to the witness had ever been made.

The failure of the district court to require the government to establish, out of the presence of the jury, a factual predicate for its question, therefore, constitutes an abuse of discretion.

Reversed and remanded for new trial.

---

**3.** We need not decide whether an affirmative response by the witness following the failure of the government to attempt to establish good faith would render the error harmless.