953 F.2d 1389
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Connie Diana PRECIADO-LEON, Defendant-Appellant.
 No. 89-10646.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 13, 1991.
Decided Jan. 17, 1992.
 
 Before HUG, CYNTHIA HOLCOMB HALL and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Connie Preciado-Leon was convicted by a jury of possession with the intent to distribute between 50 and 100 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). On this appeal, she alleges numerous errors in the conduct of her trial. We affirm.
 
 
 3
 * Preciado-Leon contends that she was denied her constitutional right to present witnesses in her defense when the district court ordered that four of five defense witnesses not be permitted to testify. The trial court excluded Preciado-Leon's witnesses because they were not disclosed to the prosecution at least ten days before trial, as required under the reciprocal discovery procedure agreed to by defense counsel.
 
 
 4
 The Supreme Court has addressed the constitutionality of excluding defense witnesses as a discovery sanction, and rejected both a rule that the Sixth Amendment always prohibits such a sanction and a rule that the Sixth Amendment never prohibits such a sanction. Taylor v. Illinois, 108 S.Ct. 646, 653 (1988). Rather, courts must balance interests, including the "integrity of the adversary process," "the fair and efficient administration of justice," and "potential prejudice to the truth-determining function of the trial process." Id. at 655.
 
 
 5
 In Taylor, the Court upheld the exclusion of witnesses as a discovery sanction where defense counsel had willfully violated the discovery rules for tactical advantage, and the prosecution was substantially prejudiced in its trial preparation. Id. at 656. Here, by contrast, because of a last minute continuance, all disclosure was completed well before trial actually began. Moreover, the trial court's "ruling [was] not based upon any perceived bad faith on [defense counsel's] part."
 
 
 6
 The Supreme Court has stated that "alternative sanctions [to exclusion] are adequate and appropriate in most cases," id. at 655, but we need not determine whether such a case is presented here. Even if Preciado-Leon's Sixth Amendment rights were violated, reversal is only mandated where such error was not harmless beyond a reasonable doubt. See Fendler v. Goldsmith, 728 F.2d 1181, 1190 (9th Cir.1983). None of the excluded witnesses would have contradicted the testimony of the Border Patrol agents, who observed large parcels being carried across the border and placed in a car, and arrested Preciado-Leon driving that car minutes later. Two were merely character witnesses for Preciado-Leon, friends who would have testified to her truthfulness and law-abiding nature. The other two witnesses would have testified that Preciado-Leon abandoned her car earlier on the day of her arrest, at a store outside of the border town where she was arrested, thus tending to corroborate Preciado-Leon's contention that she did not own the car she was driving when arrested. None of this would have negated the central fact established at trial: Preciado-Leon was arrested driving a car with bales of marijuana in the back seat, the interior of which smelled of marijuana. We conclude that the exclusion of Preciado-Leon's witnesses was harmless beyond a reasonable doubt.
 
 II
 
 7
 Preciado-Leon argues that the district court erred by failing to question potential jurors regarding ethnic bias during voir dire. The Supreme Court has stated that the failure of a federal court to question the venire on ethnic bias "will be reversible error only where the circumstances of the case indicate that there is a reasonable possibility that racial or ethnic prejudice might have influenced the jury." Rosales-Lopez v. United States, 451 U.S. 182, 191 (1981) (plurality, with Burger, C.J., and Rehnquist, J., concurring in relevant part).
 
 
 8
 The facts of Rosales-Lopez are very similar to those presented here, and compel our result. The Rosales-Lopez Court rejected the petitioner's argument that because he was of Mexican descent and charged with alien smuggling, a crime that some might associate with Mexicans, that the trial court was required to ask a voir dire question on ethnic bias. Id. at 192. Likewise, that Preciado-Leon is Hispanic and was charged with a drug crime, and that Hispanics may be associated by some with drug crimes, is not by itself sufficient to mandate questions on ethnic bias during voir dire.
 
 
 9
 Rosales-Lopez instructs that there is no per se rule requiring a federal court to ask an ethnic bias question during voir dire whenever the defendant so requests, even if the defendant is an ethnic minority, and even if the defendant is charged with a crime popularly associated with her ethnic group. We will not presume juror bias against members of any particular ethnic group, see id. at 190; the defendant must make a particularized showing of a risk of bias based on the facts of her case.
 
 
 10
 Preciado-Leon has not "argued that the matters at issue in [her] trial involved allegations of racial or ethnic prejudice." Id. at 192. Nor was she charged with "a violent criminal act with a victim of a different racial or ethnic group." Id. Thus, Preciado-Leon "falls within that category of cases in which the trial court must determine if the external circumstances of the case indicate a reasonable possibility that racial or ethnic prejudice will influence the jury's evaluation of the evidence." Id. at 192-93. Preciado-Leon has simply failed to show how the particular facts of her case presented a special risk of ethnic prejudice.[1] Under Rosales-Lopez, her broad allegation of generalized bias against Hispanics in drug cases is inadequate to establish reversible error.
 
 III
 
 11
 Preciado-Leon urges that a question asked of her on cross-examination by the government raised an implication of recent fabrication, and that under Federal Rule of Evidence 801(d)(1)(B), she should have been permitted to repeat prior consistent statements, made to agents after her arrest, to rehabilitate her credibility. "In this circuit, rehabilitative prior statements are admissible as substantive evidence under Rule 801(d)(1)(B) only if they were made before the witness had a motive to fabricate." United States v. Miller, 874 F.2d 1255, 1271 (9th Cir.1989). Preciado-Leon obviously had a motive to fabricate in post-arrest statements to government agents, and the district court clearly did not err in excluding such statements under Miller.
 
 
 12
 Preciado-Leon apparently argues in the alternative, however, that the post-arrest statements were not offered to prove the truth of the matter asserted, and thus are not subject to the hearsay rules at all. That is, the post-arrest statements were offered only to show that Preciado-Leon had not changed her alibi since her arrest, not that the alibi in substance was true. Nonetheless, we have stated that "[e]vidence which merely shows that the declarant said the same thing at trial as he did on a prior occasion is of no probative value to rebut an allegation of recent fabrication when the declarant's motive in making both statements was the same, for the simple reason that mere repetition does not imply veracity." Id. at 1272 (quoting United States v. Harris, 761 F.2d 394, 399 (7th Cir.1985)). Thus, prior statements made under the same motive to fabricate, even if not offered to prove the truth of the matter asserted, may be excluded under Rules 402 and 403 as lacking in probative value. Id. "This determination rests in the trial judge's sound discretion," id. at 1274, and it was not an abuse of such discretion for the district court here to have excluded Preciado-Leon's post-arrest statements made to government agents.
 
 IV
 
 13
 Preciado-Leon contends that the government asked a question of her on cross-examination that lacked a good faith basis. The question was: "Isn't it true ma'am that the term 'clothing' or 'clothes' is a code name for marijuana?" Defense counsel objected, but the court overruled the objection and Preciado-Leon answered: "Not to me." We have stated that a question posed by the government to a defense witness concerning whether the defendant had asked the witness to help rob a bank must be supported by "a good faith belief in the misconduct of the defendant which was the subject of the question." United States v. Davenport, 753 F.2d 1460, 1463 (9th Cir.1985). The court held that "[t]he failure of the district court to require the government to establish, out of the presence of the jury, a factual predicate for its question, therefore, constitutes an abuse of discretion." Id. at 1464.
 
 
 14
 The government claims that the factual predicate for asking its question was that Preciado-Leon had testified that she had crossed the border to Mexico at the request of a Mexican friend who wanted her to pick up some clothes, and that Preciado-Leon was later arrested with marijuana. But it is hard to see how this alone could provide a good faith basis for asking whether "clothes" was a code word for marijuana. Indeed, the trial court, although overruling defense counsel's objection, commented that, regarding "clothes" being a code word for marijuana, "there hasn't been anything suggesting that." Given the overwhelming evidence presented to the jury, however, any impropriety in this lone question is harmless error.
 
 V
 
 15
 Preciado-Leon alleges error in the district court overruling her timely objection to the following question, asked of her on cross-examination: "Now, ma'am, it's been five months since you were arrested. Did you call the agents up and give them Maria's phone number and address?"[2] Preciado-Leon contends that the government was commenting on her silence, in violation of the Self-Incrimination Clause of the Fifth Amendment.
 
 
 16
 The Fifth Amendment bars the government from commenting on a criminal defendant's failure to take the stand. See Griffin v. California, 380 U.S. 609, 613-14 (1965). Further, "use for impeachment purposes of [a criminal defendant's] silence, at the time of arrest and after receiving Miranda warnings" is unconstitutional. Doyle v. Ohio, 426 U.S. 610, 619 (1976). Here, however, the silence upon which the prosecutor commented did not occur at the time of arrest or at trial, but between arrest and trial, when Preciado-Leon was not in custody.
 
 
 17
 Indeed, the prosecutor's question was in substance merely a commentary on the lack of evidence Preciado-Leon had produced to support her alibi. "A prosecutor may call attention to the defendant's failure to present exculpatory evidence if those comments do not call attention to the defendant's failure to testify...." United States v. Lopez, 803 F.2d 969, 973 (9th Cir.1986), cert. denied, 481 U.S. 1030 (1987). The district court did not abuse its discretion in overruling Preciado-Leon's objection to the question at issue here.
 
 VI
 
 18
 Preciado-Leon alleges error in the government's failure to produce evidence showing that the car she was driving when arrested had both license plates on it. The government concedes that it was unable to produce the car during trial, and that after trial, when the car had finally been located, it indeed had both license plates attached. As Preciado-Leon points out, if she had had access to the car during trial, she could have impeached the accuracy of Customs Service computer records, which indicated that the car had crossed the border on a day it was in government custody. The jury would likely have disregarded such records, which the government had used to refute Preciado-Leon's account of crossing the border on the day of her arrest.
 
 
 19
 Due process is offended when the government fails to make available to a criminal defendant evidence favorable to the defendant and material either to guilt or innocence. Brady v. Maryland, 373 U.S. 83, 87 (1963). " '[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).
 
 
 20
 Access to the car would have served to rehabilitate Preciado-Leon's testimony that she crossed the border on the day of her arrest. But whether she crossed the border is simply not material to her guilt or innocence. Whether Preciado-Leon actually did what she claims she did earlier on the day of her arrest or not, it would not negate the uncontradicted testimony that she parked a car near a hole in the border fence, that large parcels were placed in the car by men sneaking through such hole, that Preciado-Leon noticed such parcels in the back seat, that the parcels smelled of marijuana, that Preciado-Leon proceeded to transport the parcels, and that the parcels were in the back seat and trunk of the car she was driving when arrested. Even if, as the result of Preciado-Leon having access to the car during trial, the jury had disbelieved the Customs Service computer records and believed Preciado-Leon that she had crossed the border, there is no "reasonable probability" that the outcome of her trial would have been different.
 
 VII
 
 21
 Preciado-Leon argues that certain statements made by the government in closing argument prejudiced her defense by confusing the issue of the burden of proof in the minds of the jury. In the statements at issue, the prosecutor stated that the "bottom line" of this case was whether the jury believed the testimony of Preciado-Leon and her mother, or whether it believed the testimony of the Border Patrol agents. At one point, the prosecutor stated: "And if you find [Preciado-Leon] not guilty you don't believe the agents who testified." Defense counsel failed to object at trial to such comments by the prosecutor, and hence we review only for plain error. United States v. Young, 470 U.S. 1, 15 (1985).
 
 
 22
 The plain error standard is applied by determining whether, "[v]iewed in context, the prosecutor's statements, although inappropriate and amounting to error, were not such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." Id. at 16. A couple of passing comments by the prosecutor confusing the burden of proof, followed by detailed instructions from the court on the correct burden of proof, does not rise to the level of plain error. Further, "the substantial and virtually uncontradicted evidence of [Preciado-Leon's] violation provides an additional indication that the prosecutor's remarks, when reviewed in context, cannot be said to undermine the fairness of the trial and contribute to a miscarriage of justice." Id. at 20.
 
 VIII
 
 23
 Preciado-Leon argues that the district court abused its discretion in denying her motion for a new trial based on newly discovered evidence. The new evidence upon which Preciado-Leon based her motion was the revelation after trial by the government that the car she was driving at arrest had both license plates attached.
 
 
 24
 To prevail on a new trial motion, the movant must satisfy a five part test: "(1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal." United States v. Kulczyk, 931 F.2d 542, 548 (9th Cir.), amended, 1991 U.S.App.LEXIS 14666 (1991). The government concedes that it was unable to locate the car during trial, and hence it appears that Preciado-Leon could satisfy the first two elements of such test. As we explained in our discussion of Preciado-Leon's claim of a Brady violation, however, the license plate evidence is merely impeaching, is not material to the issues at trial, and would not "probably result in acquittal." Hence, the district court did not abuse its discretion in denying the motion for a new trial.
 
 IX
 
 25
 Preciado-Leon urges that even if the errors she alleges considered individually are each insufficient to require reversal, their cumulative effect mandates a new trial. This court on occasion has found reversal warranted based on the cumulative effect of errors that singly would be too insubstantial to merit reversal. See United States v. McLister, 608 F.2d 785, 788 (9th Cir.1979); United States v. Kartman, 417 F.2d 893, 898 (9th Cir.1969).
 
 
 26
 "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir.1990). To the extent that errors occurred at Preciado-Leon's trial, however, such errors, even when aggregated, do not negate the reliability and probative value of the fundamental facts established in this case. Even viewed cumulatively, the errors could not have been outcome determinative.
 
 
 27
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3
 
 
 [1]
 Preciado-Leon contends that during an initial attempt to impanel a jury in her case, some potential jurors were excused when they admitted to bias against Hispanics. The record shows that there was an initial attempt to impanel a jury on August 29, 1989, but does not clearly indicate why a jury was not in fact impaneled that day. In any event, the fact that some potential jurors may have been excused for bias against Hispanics on August 29 has no bearing on whether jurors from an entirely separate pool, selected a month later, were biased against Hispanics. Moreover, under Rosales-Lopez, we must "determine if the external circumstances of the case indicate a reasonable possibility [of] ethnic prejudice." Id. (emphasis added)
 
 
 [2]
 "Maria" is the friend that Preciado-Leon claims she visited in Mexico on the day of arrest, and from whom she allegedly borrowed the car she was driving when arrested