47 F.3d 1177
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Pierre STUCKEY, Defendant-Appellant.
 No. 94-50043.
 United States Court of Appeals, Ninth Circuit.
 Submitted: Feb. 7, 1995.*
Decided: Feb. 10, 1995.
 
 1
 Before: BRUNETTI and KOZINSKI, Circuit Judges, and SHADUR,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 On March 5, 1993, Pierre Stuckey (Stuckey) was convicted of unarmed robbery in violation of 18 U.S.C. Sec. 2113(a) and armed robbery in violation of 18 U.S.C. Sec. 2113(a)(d). On July 8, 1993, with the assistance of new counsel Stuckey filed a motion for a new trial, which the district court denied. Stuckey now appeals those convictions and the district court's denial of his motion for a new trial. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and affirm.
 
 I.
 
 4
 On January 17, 1992, three men entered the Bank of America located at 23800 South Vermont Avenue, Harbor City, California (Harbor City bank). Two of the men jumped over the counter into the merchant tellers' area. The third ordered the customers and employees to lie down on the ground and continued waiting in the lobby until the two men who had jumped the counter finished robbing the merchant tellers' area. All three men then fled the bank.
 
 
 5
 Linda Ziegelmeyer was sitting at her desk across the bank from the merchant tellers' area when these events took place. She looked up in time to see the two men jump the counter. Although Ms. Ziegelmeyer could hear voices from behind the merchant tellers' window, she did not see what was happening or hear what was being said in that area. However, Ms. Ziegelmeyer did see the third man standing in the lobby with his hand in his pocket, as though he had a gun. At trial Ms. Ziegelmeyer identified the defendant as the bank robber who stood in the lobby.
 
 
 6
 After the robbery, in April of 1992, Detective Benjamin Venegas of the Los Angeles Sheriff's Department prepared a photospread, including the photograph of Stuckey. He showed the photospread to Ms. Ziegelmeyer. She identified Stuckey as one of the men who robbed the Harbor City bank on January 17, 1992.
 
 
 7
 On February 14, 1992, three men entered the Bank of America located at 1176 North Vermont Avenue in Los Angeles, California (Los Angeles bank). As with the January 17th robbery, one man stayed in the lobby, this time visibly holding a gun, while his two accomplices jumped the bank counter and entered the merchant teller's window. The man in the lobby ordered everyone in the bank to the ground and held a gun to the back of the security guard's head.
 
 
 8
 Immediately following the bank robbery, the three men were seen leaving the bank. A bystander saw three men run from the bank and get into a waiting car, which was described as a blue, mid-sized older model.
 
 
 9
 Shortly after the robbery, police found a dark Cadillac on Russel Street, near the Los Angeles bank. Inside and around the Cadillac, police found money. Stuckey's fingerprints were also found in the car.
 
 
 10
 Stuckey was arrested by FBI Special Agents Reynaldo Tariche and William O'Leary on November 19, 1992. Stuckey was given a Waiver of Rights form, which described his Miranda rights. When the agents realized that Stuckey could not read, Agent O'Leary read the full form to Stuckey. It is unclear from the record whether Stuckey signed the form before or after Agent O'Leary read him its contents.
 
 
 11
 Following the reading of his Miranda rights, the FBI agents informed Stuckey that he was a suspect in some bank robberies and that they would like to question him. Stuckey responded by stating, "When the feds got you, they got you." Defendant also explained that he would only discuss what he had done and would not implicate others.
 
 
 12
 Stuckey was shown a surveillance photograph from the January 17th bank robbery. When asked if he recognized the person in the photograph, he smiled and said, "That sure looks like me." Stuckey was then asked about the Neiman-Marcus hat worn by the person in the photograph. He responded, "I bought that shit for twenty dollars." Stuckey was also asked if he recalled the bank depicted in the photograph, to which he responded, "No, that shit happened a long while ago."
 
 
 13
 When Stuckey was shown a surveillance photograph from the February 14th robbery, he said he did not want to say anything else and invoked his right to consult an attorney. After Stuckey terminated the conversation, Agent Tariche telephoned Pre-Trial Services to give them information about Stuckey's arrest. During the phone conversation, Agent Tariche explained that Stuckey had been arrested for armed robbery. Stuckey interjected, "I didn't have no--I didn't have no gun at that robbery. You can't charge me with armed bank robbery."
 
 
 14
 At trial, Stuckey presented two lines of defense. First, he presented alibi evidence that he was not present at either robbery. He testified that during the time of the Harbor City bank robbery he was with his dying mother. With regard to the second robbery, both Stuckey and his fiance testified that during the robbery they were eating dinner and then attended a Lakers basketball game. Although they agreed about the sequence of events on the evening of February 14, Stuckey and his fiance gave conflicting accounts of the timing of the evening.
 
 
 15
 Stuckey's second line of defense was established through the testimony of Selwyn Williams. Williams testified that he, not Stuckey, was the third person who committed the robberies and was pictured in the surveillance photos.
 
 
 16
 With regard to Stuckey's finger prints in the Cadillac, Stuckey testified that Reginald Barnes owned a car like it. In January 1992, Barnes had allowed Stuckey to drive the car. Stuckey further testified that the car had been stolen.
 
 
 17
 Williams corroborated the latter portion of Stuckey's testimony by testifying that, prior to the Los Angeles bank robbery, he had stolen a black Cadillac like the one found near the Los Angeles bank.
 
 
 18
 After the jury returned a guilty verdict, Stuckey made a motion for a new trial, claiming that his trial counsel was ineffective because he had failed to call Barnes as a witness. In a supporting affidavit, Barnes attested to essentially the same facts that had been adduced at trial about the Cadillac and its theft.[1] Barnes also stated that he had missed a scheduled meeting with Stuckey's trial counsel and that he had called to schedule another meeting, which he kept. However, Barnes did not know whether the second meeting occurred before or after the trial.
 
 
 19
 In response, the government filed an affidavit by Stuckey's trial counsel, which stated that he did not seek a continuance of the trial in order to locate Barnes. Trial counsel made this decision because he did not know what Barnes' testimony would be, did not know where to locate Barnes, had other witnesses to cover the evidence about which Barnes was expected to testify, and did not believe the request for a continuance would have been granted. At the conclusion of the hearing, after hearing other evidence regarding the Cadillac and Barnes, the district court denied Stuckey's motion for a new trial.
 
 II.
 
 20
 We review the district court's denial of a motion for new trial for abuse of discretion. United States v. Young, 17 F.3d 1201, 1203 (9th Cir. 1994). Whether counsel was ineffective is a mixed question of fact and law, which we review de novo. United States v. Blaylock, 20 F.3d 1458, 1464-65 (9th Cir. 1994).
 
 
 21
 To establish a claim of ineffective assistance of counsel, Stuckey has the burden of demonstrating that, under the circumstances of his case: (1) his attorney's errors or omissions constituted a failure to exercise the skill and judgment of a reasonably competent attorney, and (2) his attorney's deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687 (1984); United States v. Schaflander, 743 F.2d 714, 718 (9th Cir. 1984) cert. denied, 470 U.S. 1058 (1985).
 
 
 22
 With regard to the first factor, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" United States v. Bosch, 914 F.2d 1239, 1244 (9th Cir. 1990). Accordingly, to prevail on his claim of inadequate assistance, Stuckey would have to overcome the presumption that his trial counsel's action "might be considered sound trial strategy." Id. (quoting Strickland, 466 U.S. at 689). Reviewing the totality of Stuckey's trial counsel's performance, we do not find that his failure to call Barnes as a witness "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.
 
 
 23
 This is not a case in which trial counsel failed to investigate or ignored a possible source of evidence. Cf. Evans v. Lewis, 855 F.2d 631, 636-37 (9th Cir. 1988) (holding counsel was ineffective when his failure to investigate resulted in total absence of evidence on critical aspect of the case). In this case, pursuant to his client's suggestion, trial counsel waited for Barnes to contact him, at which time a meeting was scheduled. Barnes failed to attend the meeting. Trial counsel informed Stuckey of the missed meeting, and Stuckey informed trial counsel that he was trying to contact Barnes, but was having difficulty reaching Barnes. We find that under the circumstances, trial counsel fairly investigated Barnes' potential as a witness and took the steps necessary to obtain him as a witness. Moreover, trial counsel's failure to request a continuance in order to attempt to locate Barnes did not constitute ineffective assistance of counsel because he did not know where Barnes could be found and he believed a continuance was not likely to be granted. Trial counsel's decision not to pursue Barnes as a witness was an informed strategic choice, not ineffective performance. See Strickland, 466 U.S. at 691.
 
 III.
 
 24
 Stuckey also contends that the district court erred when it ruled that Stuckey's prior conviction for armed robbery was admissible to impeach him. We need not address the merits of this contention because Stuckey waived his right to raise it when his attorney introduced the prior conviction during Stuckey's direct examination. A strategic decision to introduce a prior conviction preemptively waives a defendant's right to challenge the admission of that evidence. United States v. Williams, 939 F.2d 721, 723 (9th Cir. 1991).
 
 IV.
 
 25
 Stuckey next contends that the district court erred by permitting introduction of his statements to Agents Tariche and O'Leary. Specifically, he argues that his waiver was not valid because it was not knowingly made, and that his statements after he invoked his Miranda rights were made pursuant to an improper continuation of his interrogation.
 
 
 26
 We review de novo the district court's decision that Stuckey's statement was voluntary. United States v. Bautista-Avila, 6 F.3d 1360, 1364 (9th Cir. 1993). Our review of the district court's determination that Stuckey's waiver of his Miranda rights was knowing and intelligent is for clear error. Id.
 
 
 27
 "'Whether there has been a valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of [the] defendant."' Id. at 1365 (quoting United States v. Bernard S., 795 F.2d 749, 751 (9th Cir. 1986)). The district court determined that Agent O'Leary read Stuckey his Miranda rights in their entirety, that Stuckey was not intimidated by the interrogation, that he freely chose to discuss some things with the agents while withholding others, and that Stuckey was "not a novice ... to criminal procedures." In light of these facts, we find the district court's determination that Stuckey knowingly and intelligently waived his Miranda rights was not clearly erroneous. See id.; Derrick v. Peterson, 924 F.2d 813, 824 (9th Cir. 1990), cert. denied, 112 S. Ct. 161 (1991).
 
 
 28
 With regard to Stuckey's statements made after he invoked his Miranda rights, the district court found that they were not in response to interrogation. We agree.
 
 
 29
 A confession or statement is properly suppressed when, after a defendant has invoked his Miranda rights, the police continue the interrogation. Rhode Island v. Innis, 446 U.S. 291, 297-98 (1980); Shedelbower v. Estelle, 885 F.2d 570, 573 (9th Cir. 1989), cert. denied, 498 U.S. 1092 (1991). Agent Tariche's statements during his phone call to Pre-Trial Services could only be a continuation of Stuckey's "interrogation" if Tariche should have known his conversation was reasonably likely to elicit an incriminating response from Stuckey. Innis, 446 U.S. at 302.
 
 
 30
 Tariche's conversation did not include Stuckey, was not directed at him, and was not held for his benefit. Stuckey's statements were not part of an interrogation, and therefore the district court properly admitted them.
 
 V.
 
 31
 Stuckey also contends that the district court erred by allowing testimony regarding a photospread identification that he claims was tainted. In reviewing whether a photospread is impermissibly suggestive, we look at the totality of the circumstances. United States v. Davenport, 753 F.2d 1460, 1462 (9th Cir. 1985). There is an intra-circuit split regarding whether we review the district court's findings de novo or for abuse of discretion. United States v. Nash, 946 F.2d 679, 681 (9th Cir. 1991) (noting, but not resolving, conflict between United States v. Givens, 767 F.2d 574, 580 (9th Cir.), cert. denied, 474 U.S. 953 (1985) (de novo review), and United States v. Gregory, 891 F.2d 732, 734 (9th Cir. 1989) (abuse of discretion review)). We need not resolve this conflict because Stuckey's claim fails under either standard.
 
 
 32
 Stuckey argues that the photospread was suggestive because his attire and hair cut were different from the others pictured in the photospread. However, the photographs included in the photospread were all of black men with complexions similar to that of Stuckey. Three of the six men, including Stuckey, were wearing the same clothing. Although his haircut was different from the others pictured, Stuckey does not, and cannot, cite to us any Ninth Circuit case that has held such a photospread is improperly suggestive.
 
 
 33
 To the contrary, we have consistently held that such minor distinctions do not make a photospread unduly suggestive. See e.g., Nash, 946 F.2d at 681 (rejecting argument that photospread was unduly suggestive because only two other men pictured had light complexion and only one other man had an "afro hairstyle"); United States v. Johnson, 820 F.2d 1065, 1072-73 (9th Cir. 1987) (finding pretrial identification procedures were not unduly suggestive even though photo of defendant was hazier, defendant appeared less clean-shaven than two of the other suspects, and defendant was the only person appearing in both the photo montage and lineup). Reviewing the photographs used in pre-trial identification, we do not find that individual characteristics of those pictured created a "'very substantial likelihood of irreparable misidentification."' Id. at 1072 (quoting United States v. Davenport, 753 F.2d at 1462).
 
 VI.
 
 34
 Stuckey's final contention is that the evidence presented at trial was insufficient to sustain the jury's verdict that he committed the bank robberies. We review Stuckey's challenge to the sufficiency of the evidence in the light most favorable to the government to determine if any reasonable jury could have found the elements of the crime beyond a reasonable doubt. United States v. Huffhines, 967 F.2d 314, 319 (9th Cir. 1992) (citing United States v. Mares, 940 F.2d 455, 460 (9th Cir. 1991)).
 
 
 35
 It is undisputed that both bank robberies took place. Stuckey's sufficiency of the evidence claim challenges whether the government sufficiently connected him to the robberies.
 
 
 36
 At trial, the government introduced surveillance photographs and self-identifications by Stuckey, including his statement he bought the hat shown in the surveillance photos for twenty dollars at Neiman-Marcus. The government also introduced Ms. Ziegelmeyer's testimony, which identified Stuckey as the robber who stood in the lobby during the Harbor City bank robbery.
 
 
 37
 Although Stuckey introduced alibi evidence and evidence that someone else committed the robberies, that evidence was not unreproachable. The government pointed out discrepancies in Stuckey's and his fiance's accounting of the timing of events on February 14. The government also called into question Stuckey's fiance's credibility by comparing her ability to recall specific details (i.e., she left work at 2:42 p.m.), with her inability to remember more substantial facts (i.e., the team opposing the Lakers in the basketball game she attended). Moreover, as discussed above, Stuckey's testimony was impeached by his prior conviction. In light of all the foregoing evidence, a rational jury could have found the elements of the robberies were proven beyond a reasonable doubt.
 
 Accordingly, Stuckey's conviction is
 
 38
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a); Circuit Rule 34-4
 
 
 **
 Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 We note that while Barnes could have corroborated the basic facts of Stuckey's defense, some of the details of Barnes' declaration contradicted both his own earlier statements to an FBI agent and trial testimony by Stuckey and Williams