**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Leonard Marion GRAY, Defendant—Appellant.**

**No. 01–30189.**

**D.C. No. CR–99–00103–JDS.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 2002.

Decided Dec. 10, 2002.

Before CANBY, KLEINFELD, and HAWKINS,* Circuit Judges.

## MEMORANDUM **

This case turned on whether the jury believed the testimony by T.G., and by others recounting what T.G. had told them, that Gray had anally raped her.

The prosecutor obtained evidence tending to impeach T.G.'s testimony on October 4, 2000. The date is established by a notation in the Deaconess Hospital records that on that date: "Both Kathryn Hug and Marcia are requesting [patient's] medical records, for use with these legal proceedings," and consent was obtained from the minor patient's father. "Kathryn Hug" was the FBI special agent on the case. "Marcia" was Marcia Good Sept, the Assistant United States Attorney who prosecuted the case.

The next day, the prosecutor moved for a continuance on the grounds that T.G. was "experiencing personal difficulties and was subsequently hospitalized," and that trial could not proceed without T.G.'s testimony. The physician's affidavit filed with the motion did not disclose what the "personal difficulties" were, nor did the prosecutor disclose what they were to defense counsel, although she knew from the records she had obtained. The motion was granted, moving the trial to January.

The records contained extensive impeaching evidence, such as that the patient had "a lot of body distortions," "auditory hallucinations," and "[patient] is actively

* The panel consisted, at argument, of Judge Canby, Judge Kleinfeld, and Judge Henry A. Politz, Senior United States Court of Appeals Judge for the Fifth Circuit, sitting by designation. Judge Politz died and Judge Hawkins, drawn to replace him, read the briefs, reviewed the record, and listened to the tape of oral argument.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

psychotic." She manifested a great deal of aggression, and a clinical therapist noted that her school "was documenting her behavior due to concerns she will make false allegations toward them." T.G. characterized numerous past statements she herself had made as lies. She stabbed herself with a pencil, caused abrasions to her face, had a rash on her private parts, and voiced suicidal and homicidal thoughts. An examining clinical psychologist noted that T.G.'s perceptions were distorted, such that "when this therapist cleared his throat, she interpreted same as laughing at her." All this bore on T.G.'s ability and inclination accurately and truthfully to perceive, remember and relate what had occurred.

Defense counsel had requested all exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), eight months previously. But the prosecutor did not disclose these medical records when she obtained them. On January 4, 2001 the prosecutor disclosed a small part of these medical records, and on January 17 defense counsel moved for an order compelling production of the rest. The prosecutor resisted the motion. Trial commenced with jury selection January 19. Opening statements and testimony commenced Monday, January 29, and the trial was concluded and the verdict returned the next day, Tuesday. The records had still not been produced when trial was commenced with jury selection. The court ordered them produced Friday, January 26. Defense counsel read them over the weekend, but was unable to subpoena the relevant witnesses disclosed in the records in time for the two-day trial commencing Monday morning. Defense counsel moved for a hearing on T.G.'s competency to testify and continuance for that purpose on Monday morning, but the motion was denied. Trial was in Billings, but T.G.'s hospitalizations (and the relevant witnesses) were in Miles City, Montana, Portland, Oregon, and Reno, Nevada, as well as in Billings.

Gray was convicted and sentenced to 210 months. He appeals, claiming denial of due process because of the nondisclosures and also claiming improper vouching.

■ Reversal is required because the prosecutor violated Gray's right to due process of law by failing to disclose the medical records. We review de novo the denial of a new trial motion based on an asserted *Brady* violation.[1] Our test is (1) whether the evidence was favorable to the accused, either because it was exculpatory or because it was impeaching; (2) whether the government suppressed the evidence, either willfully or inadvertently; and (3) whether prejudice ensued from the suppression. *Anderson v. Calderon*, 232 F.3d 1053, 1062 (9th Cir.2000).

The evidence suppressed was favorable to the accused because it was impeaching. It tended to show that T.G. misperceived what was happening, as when she falsely accused a therapist of laughing at her when he cleared his throat. It showed that she lied a great deal, so much that her school during treatment feared false accusations and kept a file, and that she had profound feelings of malice toward others. And it showed that she abused herself, as by stabbing herself with a pencil and scraping her face, and did not take proper care of herself, in respect to her rash, which might raise a doubt as to whether her anal fissures were caused by the alleged rape. The prosecutor's suppression of this evidence was willful.

---

**1.** *See United States v. Steinberg*, 99 F.3d 1486, 1489 (9th Cir.1996).

■ The government argues that there was no suppression for *Brady* purposes, because the material was delivered to the defense the Friday before witnesses were presented. That was too late. It would be difficult for many people to get to see their own physicians on Friday, having just discovered a problem, much less to arrange successfully on Friday for health services providers in three states to be present in Billings, Montana for a trial involving one of their patients. We treated analogous timing as suppression in *United States v. Zuno–Arce,* 44 F.3d 1420, 1427 (9th Cir.1995): "Two working days probably would not have mattered at all a month or two before trial ... they were absolutely critical when the government had just rested. At that precise time the defense had to decide whether to call witnesses and which ones, whether to have the defendant testify, and generally how to proceed." "Disclosure, to escape the *Brady* sanction, must be made at a time when the disclosure would be of value to the accused." *United States v. Davenport,* 753 F.2d 1460, 1462 (9th Cir.1985).

The government's argument that defense counsel should have figured out that there was more the government was hiding, and made a motion to compel production immediately after its partial disclosure January 4, is frivolous. *Brady* held that the prosecutor has a duty to turn over evidence favorable to the accused "upon request." 373 U.S. at 87, 83 S.Ct. 1194. Resisting until the bitter end of a losing battle to keep the material secret, and disclosing it only when forced, at the last minute, by a court order, is a far cry from turning it over "upon request."

■ "[S]trictly speaking there is never a real *'Brady'* violation unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene,* 527 U.S. 263, 281, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Gray attacked T.G.'s credibility using the information in the suppressed reports to inform counsel's cross-examination, but the attack failed. The question of prejudice comes down to whether "there is a reasonable probability" that the credibility attack would have produced an acquittal had the material been produced when the government got it, more than three months before trial, in plenty of time to interview and arrange for the appearances of witnesses.

Three possibilities presented themselves: (1) Gray had raped an emotionally disturbed girl; (2) Gray had raped a fragile girl, who became emotionally disturbed as a result of the rape; (3) Gray had not raped the girl at all, and she imagined it or made it up and lied about it as part of her emotional disturbance. All the defense really had going for an argument for the third possibility, as opposed to the first two, was reasonable doubt. Had the defense been able to present witnesses disclosed by the reports, the self-mutilation evidence might have neutralized the anal fissures evidence, and the evidence of hallucinations, lying, and malice would have supported the third alternative strongly. We, of course, do not intimate an opinion on which of the three scenarios, or any of them, was actually what happened. The record establishes "a reasonable probability that the suppressed evidence would have produced a different verdict."

We are thus compelled to reverse the conviction because of the prosecutor's *Brady* violation of Gray's constitutional right to due process of law. It is tragic that the prosecutor's abuse should require retrial in

this case, because of the emotional stress retrial imposes in a case of this sort. But the accused, and the rest of us, are entitled to a fair and reliable trial to determine whether the heinous crime charged was committed and whether the accused committed it.

Gray also argues that improper vouching tainted the trial. T.G. had made numerous accusations against Gray, some of which were concededly false. The prosecutor elicited opinion testimony from the FBI agent about when T.G. was lying and when she was telling the truth. Because we are compelled to reverse on the *Brady* issue, we do not reach the vouching issue.

REVERSED and remanded for a new trial.